Louis MOLNAR, Appellant,

v.

**GULFCOAST TRANSIT COMPANY,**
Appellee.

**No. 23174.**

United States Court of Appeals
Fifth Circuit.

Jan. 19, 1967.

The original libel was filed May 18, 1964, seeking recovery for three separate injuries of December 1959, January 1961, and March 1961. The interval between injury and filing time therefore ranged from 3 years, 2 months (from March 1961) to 4 years, 6 months from the first and presumably most serious injury of 1959. Each exceeded the court-created three-year Jones Act, 46 U.S.C.A. § 688, analogous statute of limitations. Flowers v. Savannah Machine and Foundry Co., 5 Cir., 1962, 310 F.2d 135, 1962 AMC 2537.

The big difficulty is, of course, that instead of requiring the parties to develop fully the facts, either by affidavits, depositions for possible summary judgment,[1] or failing that, for judge resolution as the sole trier of fact in admiralty cases, as we so strongly commended in Vega v. The Malula, 5 Cir., 1961, 291 F.2d 415, 416, 1961 AMC 1698, the Judge undertook twice or thrice to pass upon this on the barebones pleadings, always nowadays a precarious course. Captain Tom Barber v. Blue Cat, 5 Cir., 1967, 372 F.2d 626; Tyler v. Peel Corp., 5 Cir., 1967, 371 F.2d 788. The result, as we pointed out in *Vega*, is that the case must now go back for the somewhat limited purpose of determining the facts with respect to laches with the possibility, if, we hope, not prospect, of a second appeal and a second reversal with the merits of any one or more or all of the three claims being heard in the third trial and terminated by perhaps a third appeal. In that situation, good administration in the conservation of precious judicial resources, Bros. Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1965, 351 F.2d 208, 209, n. 1; Mixon v. Atlantic Coast Line Railroad Co., 5 Cir., 1967, 370 F.2d 852 (concurring opinion) [Dec. 30, 1966], puts the initial burden on the Judge not merely to acquiesce in the procedural posture posed by the parties, but to give procedural direction to the case to assure the fullest effectiveness in the use of resources consistent with the interests of justice. And, more

A. Dallas Albritton, Jr., Albritton, Sessums, Gordon & Ryder, Tampa, Fla., for appellant.

Roger A. Vaughan, Jr., John W. Boult, Tampa, Fla., for appellee, Fowler, White, Gillen, Humkey & Trenam, Tampa, Fla., of counsel.

Before BROWN, GEWIN and GOLDBERG, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case raises again the question of a dismissal of a seaman's libel because of laches reflected on the face of the libel. Although it is a close case, we conclude that this action was too fast too soon and remand for a determination of laches on the facts, not the mere pleadings.

1. Then Admiralty Rule 58, 28 U.S.C.A.

important, from a substantive standpoint this gives the law the assurance that modern rules and outlooks emphasize that the merits depend on the facts, not what the lawyers in pleadings say the facts are or will, they hope, be. See, e. g., F.R.Civ. P. 54(c); Travelers Ins. Co. v. Busy Electric Co., 5 Cir., 1961, 294 F.2d 139, 144.

Although our function is, of course, to assay the asserted errors of the Judge, not the parties, Mississippi Valley Barge Line Co. v. Indian Towing Co., 5 Cir., 1956, 232 F.2d 750, 751, the parties, and certainly the Libelant, must bear a considerable part of the responsibility.[2] Pressing the concept of notice pleading to its outer limits, the Libelant thrice failed to set forth the facts in any detail even though contrasting the subsequent *McDaniel*[3] case with our earlier *Morales*[4] case showed this course to be the safer and prudential one. Guillot v. Cenac Towing Co., 5 Cir., 1966, 366 F.2d 898, 900; Gilmore & Black, Admiralty § 9–81 at 632 (1957). But even *McDaniel* recognized that "it was the duty of the Court to accept as true the well pleaded averments of the libel". 228 F.2d 189, 191.

In the solution to this case, we think, as in *Vega*, that " * * * all have been too mechanically preoccupied with the element of delay in the sense of time beyond * * * " some statute of limitations and little or no " * * * attention has been paid to the equally important element of harm from the delay." 291 F.2d 415, 418.

With this approach we think a brief discussion of the allegations of the amended libel concerning the 1959 incident[5] set forth enough to avoid a strand on pleadings alone to require an appropriate factual inquiry and determination.

Libelant on December 20, 1959, was a seaman on Respondent's tanker Martha Mac. On that date a delayed timer on a switch on a control panel failed to work causing electricity to arc out burning Libelant's hand, arm, hair and severely injuring his eyes. Respondent's employees, presumably officers and crew members of the vessel, knew of these events and the injury. Libelant was sent to a doctor for examination and treatment and Respondent received full medical report. The witnesses to the circumstances aboard the vessel and the medical treatment are now, and have been, available for interrogation and production as witnesses as needed. The vessel is under the control and in active use by Respondent, and it and its equipment is subject to inspection. The conclusion is then asserted that in view of all of this, the Respondent has not been prejudiced by the delay.

In the face of these allegations which charged directly that the Shipowner is fully informed and hence capable of meeting the claim of unseaworthiness and the resulting physical damage to Libelant, the Trial Court at that stage cannot permit a presumption that delay has been detrimental, McGrath v. Panama R. R. Co., 5 Cir., 1924, 298 F. 303, 1924 AMC 1328, to foreclose an appropriate judicial inquiry as to whether the presumed consequence is so in fact. If—and the if may turn out to be a very big one factually—the Shipowner knew of the incident, made a detailed investigation and still has the facts concerning the injury and its disabling consequences in the form of evidence, live or document-

2. The vessel owner, on the other hand, tried to get the factual inquiry underway. It served some 76 interrogatories which, although largely boilerplate for wholesale use by damage suit practitioners, were sufficiently particularized to reveal most of the essential facts from Libelant's point of view as to each of the occurrences, the eye witnesses to each, the medical disability consequences, and the like. The Trial Judge, however, in dismissing the libel for laches on the pleadings, thought it superfluous and therefore declined to order Libelant to answer the interrogatories.

3. McDaniel v. Gulf & South Am. S.S. Co., 5 Cir., 1955, 228 F.2d 189, 1956 AMC 105.

4. Morales v. Moore-McCormack Lines, Inc., 5 Cir., 1953, 208 F.2d 218, 1954 AMC 87.

5. On remand, of course, laches as to each of the three incidents must be considered.

ary, and from witnesses whose recollections are still fresh, the equitable principles of laches ought not to become the absolute obstacle to a determination of the intrinsic merits of the claim.

 For laches "is much more than time. It is time plus prejudicial harm, and the harm is not merely that one loses what he otherwise would have kept, but that the delay has subjected him to a disadvantage in asserting and establishing his claimed right or defense." Point Landing, Inc. v. Alabama Drydock & Shipbuilding Co., 5 Cir., 1958, 261 F.2d 861, 865, 1959 AMC 148. The "question is whether it would be inequitable, because of the delay, to enforce the claim." Czaplicki v. S. S. Hoegh Silvercloud, 1956, 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387, 1395, 1956 AMC 1465. See also Gutierrez v. Waterman Steamship Co., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297, 1963 AMC 1649; Cities Service Oil Co. v. Puerto Rico Lighterage Co., 1 Cir., 1962, 305 F.2d 170, 1962 AMC 1941. At this stage we need not discuss in any detail the excuses for the delay. Although frequently classified as a separate element, the inexcusability of the delay, cf. Gardner v. Panama R. R. Co., 1951, 342 U.S. 29, 30–31, 72 S.Ct. 12, 13, 96 L.Ed. 31, 36, 1951 AMC 2048, is closely intertwined with the predominant factor of detriment or lack of detriment, and what is a thin excuse may turn out to be bearable because no harm is suffered. Fidelity & Cas. Co. v. C/B Mr. Kim, 5 Cir., 1965, 345 F.2d 45, 51, 1965 AMC 1944.

When an eye is kept on the real facts, these equitable considerations may readily be applied with an even hand when *Vega*, supra, is contrasted with our opinion of the same date but opposite result in Delgado v. S. S. Malula, 5 Cir., 1961, 291 F.2d 420, 1961 AMC 1706. In the one, the Shipowner knew all that it needed to know, indeed, what it knew would do it no good whereas in the other the passage of time and other circumstances had deprived the Shipowner of the opportunity of learning and judicially establishing the critical facts. So, too, was prejudice found after hearing in Goodwyn v. Dredge Ginger Ann, 5 Cir., 1965, 342 F.2d 197, 1965 AMC 1386.[6]

As these equitable considerations will turn on the facts as they really are, we, of course, intimate no forecast on what the outcome on remand will or ought to be or whether it will be upheld.

The effort of the shipowner to justify the dismissal at this stage for failure to state claims apart from the question of laches warrants no discussion.

Reversed and remanded.

---

6. Another instance of dismissal after hearing which was upheld is McMahon v. Pan Am. World Airways, Inc., 5 Cir., 1962, 297 F.2d 268. More predominant, however, are instances where such dismissals

have been improper. See, e. g., McConville v. Florida Towing Corp., 5 Cir., 1963, 321 F.2d 162, 163; In re Casco Chemical Co., 5 Cir., 1964, 335 F.2d 645.